UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
ELARA FOODSERVICE
DISPOSAVLES LLC

                Plaintiff,

    -against-

HEZE JU XIN YUAN FOOD CO., LTD
and BIAO LI

               Defendants.
------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 21-CV-04523 (FB) (LGD)

*Appearances:*
*For Plaintiff:*
MATTHEW COREY SCHWARTZ
SIMON I. MALINOWSKI
Harris Bricken Sliwoski, LLP
27 East 21st Street
6th Floor
New York, NY 10010

THOMAS OSTER
JOHN B. MCDONALD
Harris Bricken Sliwoski, LLP
600 Stewart Street
Suite 1200
Seattle, WA 98101

*For Defendants*
HUAYING PIAO
HNP Law Firm PLLC
442 Fifth Avenue, #1251
New York, NY 10018

**BLOCK, Senior District Judge:**

      Elara Foodservice Disposables LLC ("Elara" or "Plaintiff") is a New York limited liability company that contracted with Heze Ju Xin Yuan Food Co., Ltd. ("JXY"), a Chinese company, in May 2020 to purchase vinyl disposable gloves.

1

Elara brought this action against JXY and its agent, Biao Li, also known as Brad Lee ("Lee" and together, "Defendants"), alleging that JXY breached its obligations under their contract (the "Contract") and subsequently violated federal trademark laws. Defendants move to compel arbitration of this dispute and to dismiss three of the four counts that Elara has brought against them. For the following reasons, Defendants' motion to compel is denied and their motion to dismiss is granted in part and denied in part.

## I. Background

The following facts are taken from the Complaint. For the purposes of this motion, the Court must accept them as true and draws all reasonable inferences in favor of Elara. *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019) (Explaining that at the motion to dismiss stage, courts must accept facts alleged in a complaint as true and draw all reasonable inference in favor of the plaintiff).

The Contract between Elara and JXY required JXY to deliver 30 shipping containers' worth of vinyl disposable gloves to Elara in several installments. The installment schedule was established in connection with the Contract, and Elara alleges that this schedule was important in its decision to enter into the Contract due to ongoing supply chain constraints during the COVID-19 pandemic. Under the Contract, Elara was required to make deposits to secure the shipments, and the release of the deposits was in turn conditioned on JXY meeting certain quality

control, price, and delivery requirements for each shipment. In total, Elara paid $862,308 in deposits to JXY for the 30 shipments.

In accordance with the Contract, delivery of the installments was documented with 30 purchase orders that Elara issued and 30 corresponding proforma invoices that JXY issued.[1] Elara alleges that after it received the proforma invoices, JXY breached the Contract by failing to comply with both the price and delivery dates for the goods. Then, in February 2021, Elara became aware that the shipped gloves did not meet the quality control requirements of the Contract. On or about February 23, 2021, Elara notified JXY of these quality control issues. By the end of February 2021, Elara instructed JXY to cease shipments. However, as of March of that year, JXY had continued fulfilling shipments, holding Elara's deposits, and demanding fulfillment of payment for the shipments of defective gloves.

In July 2021, Elara discovered that JXY had shipped gloves in boxes

---

[1] Elara moves to strike the proforma invoices attached as an exhibit to the Defendants' Motion to Dismiss, as well as an excerpt of communications between Elara and JXY attached as an exhibit to the Motion, and portions of Defendants' Declaration of Counsel that reference those exhibits because it argues that Defendants' counsel has no knowledge that the exhibits are genuine. However, the invoices and the communications are integral to the Complaint since Elara relies on them therein. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (explaining that courts may consider extrinsic documents in deciding Rule 12(b)(6) motions if they are integral to the complaint). As such, the Court declines to strike them.

containing Elara's name to other companies with no connection to Elara. JXY also demanded payment from Elara for these shipments. Elara claims that these shipments of gloves containing Elara's trademark have tarnished its brand reputation and violated its rights under the Lanham Act, 15 § U.S.C. 1051 et seq.

Elara has brought four counts against Defendants: (i) breach of contract against JXY, (ii) fraud in the inducement against Lee, (iii) conversion against JXY, and (iv) federal trademark infringement against JXY. Defendants seek to compel arbitration based on an arbitration clause contained in the 30 proforma invoices pertaining to the 30 shipments, and in the alternative, to dismiss the fraud, conversion, and trademark infringement claims against them under Rule 12(b)(6).

## II. Arbitration Provision

Each of the 30 shipments provided for in the Contract has a corresponding purchase order and proforma invoice. Each proforma invoice is dated May 8, 2020, and each contains an identical arbitration provision:

> 6. Arbitration: All disputes with this Sales Contract shall be settled between buyer and seller. If there is no settlement be reached for both sides, this case shall be submitted to the China International Economic and Trade Arbitration Commission. The conclusion from China international economic and trade arbitration commission shall be considered [sic]

Defs.' Mot. to Dismiss, Ex. B. The provision is reproduced here exactly as it appears in the invoices, with the same typographical errors and the same final

4

sentence that appears to be cut off.

### III.    Motion to Compel

Defendants have moved to compel arbitration based on the above arbitration clause. To resolve a motion to compel arbitration, courts apply a two-step approach to determine: "(1) whether the parties have entered into a valid agreement to arbitrate; and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The party seeking to compel arbitration bears the burden of showing that the parties agreed to arbitrate in the first place. *Jillian Mech. Corp. v. United Serv. Workers Union Local 355*, 882 F. Supp. 2d 358, 364 (E.D.N.Y. 2012) ("On a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists."). Defendants have failed to meet this burden.

"[W]hen determining whether a contract to arbitrate has been established for the purposes of the FAA, federal courts should apply 'ordinary state-law principles that govern the formation of contracts' to decide 'whether the parties agreed to arbitrate a certain matter.'" *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004) (quoting *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In doing so, the Court applies a standard similar to that applied when deciding a summary judgment motion, drawing reasonable inferences in favor of

the non-moving party. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).

Defendants arguably could show that the parties intended to arbitrate since there is a fragment of an arbitration clause contained in the invoices, which were initialed by representatives of JXY and of Elara. However, Defendants cannot show what the terms of that agreement might be since the provision ends with an unfinished sentence. As Elara points out, the missing clause could change the meaning of the agreement drastically.[2] Parties must agree to an arbitration's essential terms. *See Dreyfuss v. Etelcare Global Solutions-U.S. Inc.*, 349 Fed. App'x 551, 554 (2d Cir. 2009) (citing *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003)) (holding that as in *Opals*, where the party moving to compel arbitration could not produce a single document containing an entire arbitration clause, a purported agreement to arbitrate could not be enforced). This proposition is derived from the basic principle of contract law that a contract is not enforceable if its material terms are not reasonably certain. *See Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482, 548 N.Y.S.2d

---

[2] In its Opposition, Elara notes that there is a wide range of possible endings to the final sentence in the provision, examples of which include: "'Shall be considered non-binding and advisory only?' 'Shall be considered reviewable *de novo* as to all conclusions of fact and law before any court of competent jurisdiction?' 'Shall be considered an optional and non-exclusive alternative to litigation?'" Pl.'s Mem of Law in Opp'n to Defs.' Mot. to Dismiss at 20. Depending on the content of the missing text, the meaning of the arbitration agreement would change radically.

6

920, 923, 548 N.E.2d 203, 2206 (1989) ("Few principles are better settled in the law of contracts than the requirement of definiteness. If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract."). Without knowing what terms of a contract exist, a court is simply unable to determine whether a contract has been breached. *Id*. Since JXY is unable to produce all the material terms of the agreement to arbitrate, the parties cannot be compelled to arbitrate this dispute.

## IV. Motion to Dismiss

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The pleading must offer more than "bare assertions," "conclusory" allegations, and a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

JXY moves under Rule 12(b)(6) to dismiss Elara's fraud, conversion, and

trademark infringement claims.[3]

### a. Fraud in the Inducement—Count Two

Elara alleges fraudulent inducement against Lee based on his alleged misrepresentations about the ability of JXY to satisfy the Contract's specifications regarding the quality, price, and delivery dates of the glove shipments. JXY argues that these claims should be dismissed because they are essentially a recitation of the breach of contract claim.

In New York,[4] to state a claim for fraudulent inducement a plaintiff must allege that: (i) the defendant made a material, false representation, (ii) the defendant intended to defraud the plaintiff thereby, (iii) the plaintiff reasonably

---

[3] JXY also argues that the United Nations Convention on Contracts for the International Sale of Goods ("CISG") preempts Elara's breach of contract claim. This argument appears to be based on JXY's misunderstanding of the CISG as potentially having the power to preempt a claim. This is incorrect. Rather, whether the CISG governs Elara's claims is a choice of law question, not one of preemption. *See, e.g., Hanwha corp. v. Cedar Petrochemicals, Inc.*, 760 F. Supp 2d 426, 430-31 (S.D.N.Y. 2011) (discussing the gap-filling effect of the CISG when parties to an international contract for the sale of goods do not designate their choice of law).

[4] Although tort claims are generally not governed by the CISG, "'a tort that is in essence a contract claim and does not involve interests existing independently of contractual obligations . . . will fall within the scope of the CISG regardless of the label given to the claim.'" *Weihai Textile Group Import & Export Co., Ltd. v. Level 8 Apparel, LLC*, No. 11-CV-4405, 2014 WL 1494327, at *16 (S.D.N.Y. March 28, 2014) (quoting *Electrocraft Ark., Inc. v. Super Elec. Motors. Ltd.*, No. 09-CV-318, 2009 WL 5181854, at *7 (E.D. Ark. Dec. 23, 2009)). Here, the torts alleged, fraudulent inducement and conversion, exist independently of contract law if pleaded sufficiently. Therefore, the CISG does not apply and instead, the Court applies New York law in determining the 12(b)(6) motion.

relied upon the representation, and (iv) the plaintiff suffered damage as a result of his or her reliance on this misrepresentation. *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006). "In the context of a contract case, the pleadings must allege misrepresentations of present fact, not merely misrepresentations of future intent to perform under the contract, in order to present a viable claim that is not duplicative of a breach of contract claim . . . Moreover, these misrepresentations of present fact must be collateral to the contract." *Wyle Inc. v. ITT Corp.*, 130 A.D. 3d 438, 439, 13 N.Y.S. 3d 375 (2015). "A representation is collateral to a contract when it pertains to present facts and not 'promissory statement[s] of what will be done in the future.'" *Pacific M. Intern. Corp. v. Raman Intern. Gems, Ltd.*, 888 F. Supp. 2d 385, 398 (2d Cir. 1992) (quoting *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F.3d 171,184 (2d Cir. 2007)).

      Here, the facts that Elara alleges for its fraudulent inducement claim are essentially a restatement of its breach of contract claim. Elara contends that Lee committed fraud by failing to meet the quality control standards, delivery schedule, and pricing outlined in the Contract, that "[t]hese representations by JXY [through Lee] were false" and that Lee "knew or should have known that JXY's quality control representations were false." Compl. ¶¶ 43-44. However, Elara fails to allege beyond bare assertions that Lee had any intent to defraud or any actual knowledge of JXY's alleged lack of capabilities, both of which would be required

9

to bring a claim for fraudulent inducement against him. Instead, the claim for fraudulent inducement as pleaded essentially concerns breaches of the terms of the Contract, not any allegations of collateral misrepresentations. Further, Elara has not specified any damage that occurred as a result of the alleged fraud that is not recoverable as contract damages. *See Pacific M. Intern. Corp.* 888 F. Supp. 28 at 398. Accordingly, count two of the Complaint is dismissed.

### b. Conversion—Count Three

Elara alleges a conversion claim against JXY based on its refusal to return Elara's deposits despite Elara informing JXY that its shipments did not meet quality control requirements and demanding that JXY cease further shipments.

Under New York law, conversion is the "unauthorized assumption and exercise of ownership over goods belonging to another to the exclusion of the owner's rights." *Vigilant Ins. Co. of America v. Housing Authority of El Paso*, 87 N.Y.2d 36, 44 (1995) (internal quotations omitted). "To prevail on a conversion claim a plaintiff must show '(1) that he had a legal ownership interest . . . [in] the property and (2) that the defendant exercised unauthorized interference with the plaintiff's ownership or possession of that property.'" *Wechsler v. Hunt Health Systems, Ltd.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004) (quoting *Rella v. North Atlantic Marine, Ltd.*, No. 02-CV-8573, 2004 WL 1418021, at *5 (S.D.N.Y. June 23, 2004)). As with fraudulent inducement, conversion claims that merely

10

duplicate breach of contract claims are not actionable in New York. *See id*. at 431-32. To determine if these claims are duplicative, courts look to the damages claimed in each cause of action, as well as any legal authority underlying the claims beyond mere violations of contractual rights. *See id*.; *American Equities Group, Inc. v. Ahava Dairy Prods. Corp.*, No. 01-CV-5207, 2004 WL 870260, at *16 (S.D.N.Y. Apr. 23, 2004).

Elara's conversion claim is also duplicative of its breach of contract claim. JXY's obligation to return the deposits hinges on whether it breached the contract, not on a separate set of facts alleged by Elara. As with its breach of contract claim, Elara seeks return of the deposits in the amount to $862,308. The identical damages sought for each claim confirms that the conversion and breach of contract claims are duplicative and not independent of one another. *See Wechsler*, 330 F. Supp. 2d at 432. As a result, the Court holds that Elara may not recover for conversion on this set of facts and count three of the Complaint is dismissed.

### c. Federal Trademark Infringement—Count Four

Finally, JXY seeks dismissal of the federal trademark infringement claim. Elara's trademark infringement claim is based on JXY's alleged resale of goods containing Elara's registered trademark which Elara had rejected on quality control grounds. JXY argues that this does not constitute a trademark violation because the resold goods were genuine Elara gloves, and in the alternative, that the Lanham

11

Act does not attach because the gloves did not enter United States commerce.

To state a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must establish that (i) it holds a valid trademark entitled to protection under the Lanham Act, (ii) that the defendant used the mark, (iii) in commerce, (iv) in connection with the sale or advertisement of goods or services, (5) without the plaintiff's consent. *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 406 (2d Cir. 2005). The sale of those goods without the consent of the registrant must also be likely to cause confusion about the source of the goods. *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996). While the resale of genuine goods bearing a true mark is generally permitted without the authorization of the trademark owner, resale is not permitted when the trademark owner can demonstrate that the goods do not confirm to its quality control standards. *See Polymer Tech. Corp. v. Mimran*, 37 F. 3d 74, 78 (2d Cir. 1994). This is because "[o]ne of the most important protections afforded by the Lanham Act is the right to control the quality of goods manufactured and sold under the holder's trademark." *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986).

Here, JXY does not contest that Elara has a valid trademark, nor that JXY used the mark in commerce in connection with the sale of goods without Elara's consent. Instead, it argues, without any basis, that the resale was permissible

12

despite the fact that Elara rejected the goods for their failure to meet the brand's quality control standards. Elara has plainly alleged facts sufficient to plead a Lanham Act violation for trademark infringement since it alleges facts that support its rejection of the goods on the basis of quality control and that JXY resold the goods to a third party without Elara's consent.

JXY alternatively argues that Elara's trademark infringement claim fails because the resale shipments did not enter into United States commerce, and the Lanham Act does not necessarily have extraterritorial reach. *See Juicy Couture, Inc. v. Bella Intern. Ltd.*, 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013) (Elaborating the three-step analysis courts use to determine whether the Lanham Act applies extraterritorially). JXY supports its argument with the fact that a bill of lading attached as an exhibit to the Complaint which reflects the unpermitted resale of the goods lists a Canadian address under the consignee. *See* Compl. at Ex. 5. However, the party to be notified of the shipment is located in Dearborn, Michigan, the port of discharge is listed as "Newark, NJ" and the place of delivery is listed as "New York, NY." *Id*. At this stage of litigation, the Court draws reasonable inferences in Elara's favor. Because the bill of lading reflects a place of delivery, a port of discharge, and a party to be notified in the United Sates, and the Canadian company listed as consignee is located at the United States border, it is reasonable to infer that the goods in question entered United States commerce. Accordingly,

13

JXY's motion to dismiss fails as to count four.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is denied. Their motion to dismiss is granted with respect to count two against Defendant Lee and count three against Defendant JXY and denied as to count four. Accordingly, Lee is dismissed as a defendant in this action.

**SO ORDERED.**

       /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 30, 2023